# In the United States Court of Appeals for the Eleventh Circuit

---

UBS FINANCIAL SERVICES, INCORPORATED,

*Petitioner-Appellee,*

*v.*

DAVID EFRON,

*Respondent-Appellant.*

---

*ON APPEAL FROM THE SOUTHERN DISTRICT OF FLORIDA
(NO. 1:22-CV-23924) (THE HONORABLE DARRIN P. GAYLES)*

---

**BRIEF FOR PETITIONER-APPELLEE
UBS FINANCIAL SERVICES INC.**

---

ALEX JOSEPH SABO, II
BRESSLER AMERY & ROSS, PC
  *515 E. Las Olas Boulevard*
  *Suite 800*
  *Fort Lauderdale, FL 33301*
  *(305) 501-5485*
  *asabo@bressler.com*

CHRISTOPHER N. MANNING
AMY MASON SAHARIA
  *Counsel of Record*
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue S.W.*
  *Washington, DC 20024*
  *(202) 434-5000*
  *asaharia@wc.com*

## CORPORATE DISCLOSURE STATEMENT AND
## CERTIFICATE OF INTERESTED PERSONS

With the exceptions noted below, petitioner-appellee UBS Financial Services Inc. ("UBS") agrees and hereby certifies that the Certificate of Interested Persons and Corporate Disclosure Statement in appellant's opening brief is accurate.

The correct name for petitioner-appellee is "UBS Financial Services Inc." (without a comma). Efron Br. C-2 of 3 (No. 25). Appellant's statement—and the case caption of his brief—incorrectly refer to petitioner-appellee as "UBS Financial Services Incorporated of Puerto Rico." Efron Br. C-3 of 3. UBS Financial Services Incorporated of Puerto Rico merged with UBS Financial Services Inc. effective July 31, 2021. *See* Dkt.7:p.1 & n.1.[1]

---

[1] "Dkt." refers to the district court docket number. "P." or "pp." refers to the page numbers within the docket entry as assigned by the district court ECF system. Parentheticals identify paragraph numbers or headings in a page.

## STATEMENT REGARDING ORAL ARGUMENT

This case involves the application of well-settled legal principles under the Federal Arbitration Act to the record. Appellee respectfully submits that the Court can fully understand and decide the issues without oral argument.

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES ...................................................................1

INTRODUCTION ........................................................................................1

STATEMENT OF THE CASE .....................................................................3

    A.    UBS's Settlement Payment to Efron's Ex-Wife ............................3

    B.    The Arbitration Proceedings .........................................................5

    C.    The Arbitration Award ...................................................................9

    D.    The Proceedings Below ................................................................10

SUMMARY OF ARGUMENT ....................................................................12

STANDARD OF REVIEW .........................................................................15

ARGUMENT ..............................................................................................16

I.     THE DISTRICT COURT CORRECTLY HELD THAT THE PANEL'S ALLEGED "OMISSIONS" DO NOT WARRANT VACATUR UNDER FAA SECTION 10(a). .......................................16

    A.    The Panel Had No Obligation to Provide a Reasoned Award Where One Was Not Jointly Requested ............................17

    B.    The Alleged "Omissions" Neither Constitute Misconduct Nor Render the Award "Fatally Ambiguous." ..............................21

II.    EFRON'S ARGUMENT THAT THE PANEL EXCEEDED ITS POWERS BY "MODIFYING" THE MASTER ACCOUNT AGREEMENT'S TERMS IS BOTH FORFEITED AND WRONG. ................................................................................................22

    A.    Efron Forfeited His New Argument. ...........................................23

    B.    Efron's New Argument Is Wrong on the Merits. ........................25

        1.    The arbitrators arguably construed the contract ............25

        2.    Legal error is not grounds for vacatur. ............................30

III.   THE DISTRICT COURT CORRECTLY CONCLUDED THAT THE AWARD WAS NOT PROCURED BY UNDUE MEANS OR THROUGH EVIDENT PARTIALITY. ...........................................32

CONCLUSION............................................................................................37

# TABLE OF CITATIONS

Page

## CASES

*A.G. Edwards & Sons, Inc. v. McCollough*,
    967 F.2d 1401 (9th Cir. 1992)........................................................32

*Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324 (11th Cir. 2004).............24

*AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*,
    508 F.3d 995, 1001 (11th Cir. 2007)............................................15

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*,
    52 F.3d 359 (D.C. Cir. 1995).....................................................32, 34

*Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir. 1988)............33

*Brown v. Brown-Thill*, 762 F.3d 814 (8th Cir. 2014) ........................................21

*Bryant v. Jones*, 575 F.3d 1281 (11th Cir. 2009) ..............................................24

*Butterkrust Bakeries v. Bakery, Confectionary & Tobacco Workers
    Int'l Union, AFL-CIO, Local No. 361*,
    726 F.2d 698, 700 (11th Cir. 1984)...............................................26

*Candelario v. UBS Fin. Servs. Inc. of P.R.*,
    2016 WL 1275038 (D.P.R. Apr. 6, 2016).......................................3, 4

*Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151 (11th Cir. 2018).......24, 25

*Citi Int'l Fin. Servs., LLC v. VectorGlobal WMG, Inc.*,
    2018 WL 6807319 (S.D. Fla. Jan. 31, 2018), *report and recommenda-
    tion adopted*, 2018 WL 6807315 (S.D. Fla. Oct. 26, 2018) ...........19

*Efron v. UBS Fin. Servs. Inc.*, 300 So. 3d 733 (3rd Dist. Fla. 2020).................6

*Efron v. UBS Fin. Servs. Inc.*, No. 3:24-cv-01168 (D.P.R. Apr. 5, 2024) .........6

*Efron v. UBS Fin. Servs. Inc. of P.R.*, --- F.4th ----,
    2024 WL 1190945 (1st Cir. Mar. 20, 2024) ....................................6

Cases—continued:

*Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*,
   377 F.3d 1164 (11th Cir. 2004)..........................................................24

\* *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313 (11th Cir. 2010) .............15, 31

\* *Gherardi v. Citigroup Global Markets Inc.*,
   975 F.3d 1232 (11th Cir. 2020) ...............................16, 22, 26, 31, 32

*Grupo Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*,
   78 F.4th 1252 (11th Cir. 2023) .........................................................34

*Health First, Inc. v. Capitol Security Ins. Corp.*,
   747 F. App'x. 744 (11th Cir. 2018)...................................................27

*Hoteles Condado Beach v. Union de Tronquistas Local 901*,
   763 F.2d 34 (1st Cir. 1985) ................................................................28

*Johnson v. Directory Assistants Inc.*, 797 F.3d 1294 (11th Cir. 2015)............15

*Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   481 F.3d 813 (D.C. Cir. 2007)............................................................21

*Liberty Sec. Corp. v. Fetcho*, 114 F. Supp. 2d 1319 (S.D. Fla. 2000)...............34

*Mendelka v. Penson Fin. Servs., Inc.*,
   2017 WL 1208665 (S.D.N.Y. Mar. 31, 2017)...................................19

*Original Appalachian Artworks, Inc. v. JAKKS Pac., Inc.*,
   718 F. App'x 776 (11th Cir. 2017)....................................................15

\* *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013) ..............................25

*PaineWebber Grp., Inc. v. Zinsmeyer Trs. P'ship*,
   187 F.3d 988 (8th Cir. 1999)..............................................................32

---

\* Citations upon which petitioner-appellee primarily relies are marked with an asterisk.  11th Cir. R. 28-1(e).

Cases—continued:

*Pochat v. Lynch*, 2013 WL 4496548 (S.D. Fla. Aug. 22, 2013)....................19, 20

*Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 1410 (11th Cir. 1990)...........................................................17

*Rainier DSC 1, LLC v. Rainier Cap. Mgmt., LP*,
    828 F.3d 362 (5th Cir. 2016)..............................................................21

*Riccard v. Prudential Ins.*, 307 F.3d 1277 (11th Cir. 2002)..............................16

*Rosensweig v. Morgan Stanley & Co.*, 494 F.3d 1328 (11th Cir. 2007)...........34

* *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007 (11th Cir. 1998)................21, 22

*Sears, Roebuck & Co. v. Teamsters Local Union No. 243*,
    683 F.2d 154 (6th Cir. 1982).............................................................28

*Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*,
    57 F.4th 372 (2d Cir. 2023)...............................................................22

*Stone v. Bear, Stearns & Co.*, 872 F. Supp. 2d 435 (E.D. Pa. 2012)................20

*U.S. Soccer Fed'n v. U.S. Nat'l Soccer Team*,
    838 F.3d 826 (7th Cir. 2016).............................................................28

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus.
    & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*,
    807 F.3d 1258 (11th Cir. 2015).........................................................17

*Warrior Met Coal Mining, LLC v. United Mine Workers of Am.*,
    28 F.4th 1073 (11th Cir. 2022) ...................................................26, 27

*Wiand v. Schneiderman*, 778 F.3d 917 (11th Cir. 2015) ...........................15, 31

* *Wiregrass Metal Trades Council AFL-CIO v. Shaw Envt'l &
    Infrastructure, Inc.*, 837 F.3d 1083 (11th Cir. 2016) ............25, 26, 27, 28, 29

## STATUTES AND RULES

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*
  § 10(a) ...........................................................14, 15, 16, 36
  § 10(a)(1) ............................................................1, 11, 32
  § 10(a)(2) ............................................................1, 11, 34
  § 10(a)(3) ...................................1, 6, 11, 13, 16, 20, 21
  § 10(a)(4) .......... 1, 11, 12, 13, 16, 19, 20, 21, 22, 23, 25, 31

Labor Management Relations Act,
  Pub. L. No. 80-101, 61 Stat. 136 (1947)...........................28

FINRA Rule
  12904...................................................................................19
  12904(e) ...............................................................17, 18, 19
  12904(f) ............................................................................18
  12904(g) .......................................................................10, 18

## STATEMENT OF THE ISSUES

1.  Whether the district court correctly held that the absence of discussion of choice of law or other subsidiary legal issues in an unreasoned Financial Industry Regulatory Authority ("FINRA") arbitration award does not compel vacatur of the award under sections 10(a)(3) and 10(a)(4) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*

2.  Whether appellant's argument that the arbitrators' application of a contractual indemnification provision modified the parties' contract (a) is forfeited because appellant did not raise it below, and (b) improperly seeks to relitigate the merits of the underlying arbitration and, thus, does not warrant vacatur under FAA section 10(a)(4).

3.  Whether the district court correctly held that appellant failed to prove that appellee UBS procured the award through undue means or that the arbitrators harbored evident partiality under FAA sections 10(a)(1) and 10(a)(2).

## INTRODUCTION

Appellant David Efron asks the Court to vacate an arbitral award because he lost. Despite the messy history of the arbitration and the fifteen years of disputes that preceded it, this appeal presents straightforward issues

under the FAA, none of which is grounds for vacatur. A panel of three arbitrators, approved by both parties, awarded appellee UBS nearly $6.5 million for damages, attorneys' fees, interest, and expenses incurred after UBS spent years pursuing Efron for contractual indemnity. The award issued after extensive document discovery, a five-day evidentiary hearing, and voluminous pre- and post-hearing briefing. At the close of the hearing, Efron's counsel thanked the arbitrators for their "fairness" and "objectivity," and stated that he had "no issues" or remaining objections to lodge. Dkt.48-1:pp.113, 206.

UBS moved to confirm the award. Efron opposed, arguing that the panel should have mentioned its choice-of-law analysis in its unreasoned award and that the panel's admission of certain evidence biased the panel against him. The district court correctly rejected Efron's arguments. It held that the panel's issuance of an unreasoned award, in compliance with the arbitral forum's rules, did not exceed its powers or constitute misconduct. The district court further held that Efron's speculative claim about the panel's bias and UBS's purported use of "undue means" could not support vacatur. The court thus confirmed the award.

On appeal, Efron largely recycles his arguments below, none of which provides any reason to disturb the district court's decision. He identifies no

authority supporting his claim that the panel's failure to discuss the choice-of-law question or other subsidiary legal questions in its unreasoned award warrants vacatur. He provides no evidence that the panel was biased or that UBS procured the award through undue means. Efron also adds a new claim: that the arbitrators improperly modified the parties' contract. But Efron forfeited that argument, which is a thinly veiled attempt to relitigate the merits of the parties' dispute, by failing to present it below. This Court should reject Efron's attempted end-run around arbitration and finally put this matter to rest.

## STATEMENT OF THE CASE

### A.    UBS's Settlement Payment to Efron's Ex-Wife

In 2001, Efron, an attorney and wealthy investor, divorced his wife, Madeleine Candelario Del Moral. *Candelario v. UBS Fin. Servs. Inc. of P.R.*, 2016 WL 1275038, at *2 (D.P.R. Apr. 6, 2016). Efron and Candelario thereafter litigated the division of their marital assets. In 2006, the Puerto Rico Court of Appeals affirmed an order directing Efron to pay Candelario $50,000 per month for her share of the marital estate, retroactive to 2001. *Id.* Efron refused to comply.

Candelario obtained a court order attaching Efron's assets to satisfy his accumulated debt, then about $4.1 million. *Id.* Candelario served the order on UBS, and UBS restrained Efron's accounts. *Id.* Soon after, the judge who issued the attachment order verbally vacated it. *Id.* at *7. After Candelario's challenges to the verbal ruling failed, Efron urged UBS to restore control of the accounts to him, and UBS complied. *Id.* at *8-9. Eventually, a new judge reinstated the original attachment order and directed UBS to liquidate Efron's accounts to satisfy his debt to Candelario. *Id.* at *10. By that time, however, Efron had transferred most of his assets elsewhere, leaving insufficient funds to pay Candelario. *Id.* at *10-12.

Candelario sued UBS in the U.S. District Court for the District of Puerto Rico, alleging that UBS negligently relied on the first judge's verbal order to return control of the accounts to Efron. *Id.* at *3. Over the next eight years, UBS defended the litigation, including a successful appeal of an early adverse summary-judgment ruling. *Id.* at *3-5. Ultimately, in March 2016, after a seven-day bench trial, the district court found that UBS had been negligent and ordered UBS to pay Candelario $4.7 million plus interest. *Id.* at *36. The parties soon settled for $4.45 million. Dkt.10 (¶ 5).

In his Master Account Agreement with UBS, Efron agreed to indemnify UBS for any settlements or judgments paid to resolve claims relating to his accounts, and to reimburse UBS for associated litigation expenses and collection costs. Dkt.10-1:p.15 (Liability). Efron also agreed to arbitrate "any and all controversies which may arise between [the parties] concerning any account, transaction, dispute or the construction, performance or breach of this Agreement." *Id.* at 17 (Arbitration).

UBS demanded reimbursement for its settlement payment to Candelario, and Efron refused. Dkt.10 (¶ 6). In accordance with the Master Account Agreement and Efron's choice of arbitral forum, the parties submitted the dispute to arbitration before FINRA. Dkt.10-3:pp.2-3.

## B.    The Arbitration Proceedings

The full procedural history is not necessary to resolve this appeal. Broadly, it involved an initial arbitration resulting in an award for UBS that was vacated, the subsequent composition of a second panel of arbitrators who later withdrew, and a rehearing before a third panel resulting in the award at issue on appeal.

Initial arbitration (2017-2018). UBS asserted claims for contractual indemnification, unjust enrichment, and equitable contribution. Dkt.10-4:pp.2-

3. Efron counterclaimed for negligence, breach of contract, and breach of fiduciary duty. *Id.*[2] Evidentiary hearings were set for April 2018. *Efron v. UBS Fin. Servs. Inc.*, 300 So. 3d 733, 735 (3rd Dist. Fla. 2020). Efron filed two motions to postpone the hearings, both of which the arbitrators denied. *Id.* The hearings took place as scheduled, and UBS presented witnesses and argument. *Id.* Efron did not attend. *Id.* In May 2018, the arbitrators awarded UBS $9.7 million. Dkt.10-4:p.4.

UBS sought to confirm that first award in Florida state court. The court confirmed the award, but the appellate court vacated that ruling on the ground that the arbitrators unreasonably denied Efron's second postponement motion. *Efron*, 300 So. 3d at 735-37 (citing 9 U.S.C. § 10(a)(3)). On remand, the

---

[2] Efron's counterclaims were dismissed as untimely, Dkt.10-21:p.4, and he later brought them and other claims against UBS and several UBS employees in Puerto Rico federal district court. On March 20, 2024, the First Circuit affirmed the dismissal of those claims, finding that Efron had "come dangerously close" to sanctions. *Efron v. UBS Fin. Servs. Inc. of P.R.*, --- F.4th ----, 2024 WL 1190945 (1st Cir. Mar. 20, 2024). On April 5, 2024, Efron filed a new lawsuit seeking to replead most of the claims and collaterally challenge "UBS's filing and prosecution of arbitration proceedings," its "enforc[ement of] an indemnification provision," and the "validity of the choice of law provision in . . . the Master Account Agreement." Compl., ECF 1, at ¶¶ 64, 101, *Efron v. UBS Fin. Servs. Inc.*, No. 3:24-cv-01168 (D.P.R. Apr. 5, 2024) (emphasis omitted).

lower court, over Efron's objections seeking a new forum, "directed [the parties] to proceed with a rehearing" before FINRA. Dkt.8-3:p.3.

Second panel (2021). In 2021, a second FINRA panel was appointed. But after Efron's unfounded motion to disqualify the arbitrators, and a thinly veiled threat that he might sue them, the second panel withdrew. Dkt.10 (¶¶ 14-23). Efron then moved to "disqualify" FINRA altogether. *See id.* ¶ 24; Dkt.24-2. The Florida state court denied Efron's request and instead ordered the parties "to proceed with a rehearing of their arbitration" before a new FINRA panel. Dkt.10-8:p.2.

Rehearing (2022). At last, in March 2022, a third panel was appointed. Efron participated in the panel-selection process, and the "parties accepted the panel's composition." Dkt.1-1:pp.10, 16-17; Efron Br. 11 ("the arbitration was conducted before a panel approved by both Efron and UBS"). The new arbitrators granted Efron additional discovery, resulting in 400 more pages of documents from UBS on top of the 20,000 already produced. Dkt.1-1:p.10; Dkt.10 (¶ 31). Efron also received leave to serve four trial subpoenas. Dkt.10-15:pp.2-3. The parties submitted extensive pre-hearing briefing and exhibits. Dkt.10 (¶ 32).

An evidentiary hearing was held in Florida over five days in late summer 2022. *See* Dkt.44-1, Dkt.45-1, Dkt.46-1, Dkt.47-1, Dkt.48-1. At the outset, Efron again accepted the composition of the panel. Dkt.1-1:pp.16-17. Both parties gave opening statements, and Efron cross-examined each of UBS's witnesses. Dkt.44-1:p.4; Dkt.45-1:p.3; Dkt.46-1:p.4. UBS's case in chief lasted four days. *See* Dkt.44-1:p.64; Dkt.47-1:p.166.

Although the panel had reserved three additional days for the hearing, Efron rested his case after less than one. His counsel urged that they wrap up early so that he could make a scheduled flight and avoid Efron's incurring the expense of additional hearing days. Dkt.48-1:pp.91, 205. Efron called a single witness. *Id.*

In closing, Efron's counsel said he was grateful for "the time you have taken to carefully listen to all of the witnesses and consider all of the evidence during this final hearing," and that he "appreciate[d] the fairness and . . . the objectivity which you have attended to the various issues that have arisen during this hearing." *Id.* at 112-13. The chairperson asked if "the parties have any other issues or objections you would like to raise that have not been previously raised," to which Efron's counsel responded, "I have no issues." *Id.* at 204-06.

The arbitrators requested two post-hearing submissions from the parties. First, the arbitrators requested briefing on their authority to award attorneys' fees and litigation expenses. *Id.* at 195. Second, they requested proposed awards expressing the parties' positions on the relief to be awarded and the basis for the relief, including relevant choice-of-law analyses. *Id.* at 197-98.

UBS requested $14 million, comprising its $4.45 million settlement payment to Candelario, pre-award interest that had accrued since 2016, UBS's litigation expenses incurred in defending Candelario's claims over eight years, and UBS's collection expenses in pursuing arbitration and confirmation proceedings against Efron over five years. Dkt.10-21:p.3. Efron raised several arguments in defense, including that UBS was not legally entitled to indemnification, that a different contract (other than the Master Account Agreement) should govern the dispute, and that UBS's expenses for litigation and collection were unreasonably high. Dkt.66-1:pp.23-65.

## C. The Arbitration Award

In November 2022, the arbitrators awarded UBS approximately $6.5 million. Dkt.10-21:pp.3-4. This sum comprised "$4,450,000.00 in compensatory damages, plus $529,854.80 in interest," and an additional "$1,501,000.00

in attorneys' fees and costs" "[i]n accordance with the terms of the parties' Master Account Agreement." *Id.* at 4.

The award noted that Efron requested an explained decision but UBS did not. *Id.* Consistent with FINRA's Code of Arbitration Procedure for Customer Disputes, the arbitrators therefore "did not provide an explanation." Dkt.10-21:p.4; *see* FINRA Rule 12904(g)(1) (providing that paragraph (g) regarding "Explained Decisions" "applies only when all parties jointly request an explained decision"). The award includes a "Case Summary" identifying UBS's "causes of action," including "contractual indemnification; unjust enrichment; and equitable contribution," and Efron's Statement of Answer, in which he denied the allegations and asserted various affirmative defenses. Dkt.10-21:p.3; *see* Dkt.66-1:pp.23-65. The arbitrators also stated in a section entitled "Other Issues Considered and Decided" that they had reviewed the pleadings, evidence, and other materials submitted by the parties. Dkt.10-21:p.4.

### D. The Proceedings Below

UBS moved to confirm the award in Florida state court. Efron removed to the Southern District of Florida and moved to vacate.

The district court granted UBS's motion and denied Efron's. The court observed that Efron "spen[t] a major portion of his Motion" attempting to re-litigate the merits—i.e., "arguing that the 2022 Panel should have applied Puerto Rico law, and that the 2022 Panel erred, under Puerto Rico law, in issuing the 2022 Award." Dkt.70:p.3 n.1. The district court declined to "consider the merits of Efron's claims under Puerto Rico law." *Id.*

The district court determined that Efron had presented two arguments for vacatur. *Id.* at 3. First, Efron argued that the arbitrators' "failure to identify and address the choice-of-law issue" in their award constituted "misconduct" that prejudiced his rights under FAA section 10(a)(3) and rendered the award "fatally ambiguous" under section 10(a)(4). *Id.* Second, Efron argued that "UBS's introduction of evidence" of the prior proceedings—for which UBS was seeking to recover attorneys' fees—improperly influenced the arbitrators, such that:

    (i)   the award was "procured by undue means" under FAA section 10(a)(1);

    (ii)  the arbitrators demonstrated "evident partiality" under section 10(a)(2);

    (iii) the arbitrators engaged in misconduct in allowing the evidence and therefore denied Efron a fair hearing under section 10(a)(3); and

(iv)   the arbitrators "exceeded their powers" and failed to render "a mutual, final, and definite award" under section 10(a)(4).

*Id.* at 3-4.

The district court considered and rejected each argument.  The court found that the "Parties did not request a reasoned award" under the FINRA Rules, so the arbitrators were "not required to specifically discuss [the] choice-of-law analysis." *Id.* at 4.  The court refused to infer misconduct from the panel's omission of a choice-of-law discussion when the panel was "not even required to explain its reasoning." *Id.*  Similarly, the court concluded that the arbitrators' omission of a choice-of-law analysis did not render the award "fatally ambiguous." *Id.* at 3.  Finally, observing that arbitrators "enjoy wide latitude" in making evidentiary decisions," the court concluded that "Efron fail[ed] to cite any record evidence to support the notion that there was partiality among the arbitrators" or any undue means. *Id.* at 6-7.  Efron appealed.

## SUMMARY OF ARGUMENT

Although Efron organizes his arguments on appeal under nine headings, he appears to makes three distinct arguments.  None warrants vacatur of the arbitral award.

I.   First, Efron argues that the arbitrators' failure to discuss in the award subsidiary issues like choice of law, contract interpretation, or the

viability of UBS's alternative equitable claims renders the award fatally flawed, ambiguous, or otherwise the product of arbitrator "misconduct." He is wrong on all counts. As the district court held, neither the FAA nor FINRA rules require reasoned awards, much less the level of specificity that Efron demands. Efron alleges nothing close to the kind of affirmative, intentional "misconduct" that justifies vacatur under sections 10(a)(3) or 10(a)(4). He received a full and fair hearing, complete with extensive briefing on his key issues, which the arbitrators duly considered. That is enough.

II.    Second, Efron argues that the arbitrators exceeded their powers by effectively modifying or amending the Master Account Agreement, rather than interpreting it according to its terms. Efron never raised this argument in the district court and thus forfeited it, and no exceptional condition excuses the forfeiture. The argument also fails on the merits. When a contractual provision is open to interpretation, courts presume that the arbitrators construed the provision absent evidence to the contrary. Efron cannot overcome that presumption here. The expansive indemnification provision—which covers "any and all losses, claims, damages, . . . settlements, . . . causes of action, . . . acts, . . . omissions, . . . judgments, liabilities and expenses (including without limitation all expenses of litigation or preparation therefor . . .) which

UBS . . . may pay or incur arising out of any claims by any person or entity in any way relating to this Account," Dkt.10-1:p.15 (Liability)—plainly covers UBS's claim. Efron identifies no evidence suggesting that the arbitrators did not construe that provision. Instead, he relitigates his merits argument that Puerto Rico law required the arbitrators to narrow the arbitration provision to exclude claims for losses allegedly attributable to UBS's negligence. The FAA, however, does not permit courts to vacate arbitral awards on the ground that the arbitrators got the law wrong. Efron agreed to have the *arbitrators* decide such legal questions.

III.   Third, Efron complains that UBS's introduction of evidence about the dispute's procedural history and other evidence amounted to "undue means" and biased the panel against him. But no court has interpreted "undue means" to encompass such complaints. Arbitrators enjoy wide latitude in evidentiary matters, and UBS's evidence related directly to its claim for attorneys' fees and Efron's credibility as a witness. Efron also fails to substantiate his allegations of bias. He points to no conflict of interest, real or imagined, and identifies no evidence that the proceedings were anything other than fair. The district court rightly rejected his challenges as failing under any section 10(a) theory.

## STANDARD OF REVIEW

This Court reviews a district court's confirmation of an arbitration award and the denial of a motion to vacate under the same standard: findings of fact are reviewed for clear error; legal conclusions *de novo*. *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1321 (11th Cir. 2010).

"Because arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007) (internal quotation marks omitted). "[A] party seeking to vacate an arbitrator's award has the burden of establishing the existence of a specific statutory ground for vacatur." *Original Appalachian Artworks, Inc. v. JAKKS Pac., Inc.*, 718 F. App'x 776, 780 (11th Cir. 2017). Presumption favors confirmation, and federal courts "should defer to an arbitrator's decision whenever possible." *Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1299 (11th Cir. 2015). Under 9 U.S.C. § 10(a), a court "may revisit neither the legal merits of the award nor the factual determinations upon which it relies." *Wiand v. Schneiderman*, 778 F.3d 917, 926 (11th Cir. 2015).

**ARGUMENT**

The FAA, which both parties agree governs this appeal, "imposes a heavy presumption in favor of confirming arbitration awards." *Riccard v. Prudential Ins.*, 307 F.3d 1277, 1288 (11th Cir. 2002). "Vacatur is allowed only in very unusual circumstances . . . ." *Gherardi v. Citigroup Global Markets Inc.*, 975 F.3d 1232, 1236 (11th Cir. 2020) (internal quotation marks omitted). The FAA sets forth the sole and exclusive grounds for vacating an arbitral award. The district court correctly concluded that none is present here.

**I.   THE DISTRICT COURT CORRECTLY HELD THAT THE PANEL'S ALLEGED "OMISSIONS" DO NOT WARRANT VACA-TUR UNDER FAA SECTION 10(a).**

Efron argues that the award should be vacated because the arbitrators did not specifically identify the "issues the arbitrators resolved in the Award," including (i) "the interpretation and enforceability of the indemnification provision of the MAA" and (ii) the "resolution of which law to apply." Efron Br. 17. He argues that these omissions constitute "misconduct" under FAA section 10(a)(3) and means that the arbitrators exceeded their powers and failed to render a final award in violation of section 10(a)(4). Efron is wrong on all counts.

### A. The Panel Had No Obligation to Provide a Reasoned Award Where One Was Not Jointly Requested.

Efron argues that the district court erred by concluding that the arbitrators were not required to "identify" key issues like choice of law in their award. Efron Br. 16-22. In doing so, he ties himself into a knot: conceding that neither the FAA nor FINRA rules require reasoned awards, while also arguing that FINRA Rule 12904(e) requires that the award summarize "*every* issue . . . resolved.*" *Id.* at 19. The specificity that Efron demands would destroy the longstanding distinction between reasoned and unreasoned awards in this Court's precedent and in FINRA's practices, and would undermine arbitration's efficiency advantages.

As a general matter, "arbitrators have never been required to explain their awards," as requiring such an explanation "would defeat the policy in favor of expeditious arbitration." *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 1410, 1413 (11th Cir. 1990); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1275 (11th Cir. 2015) ("Unless the parties stipulate otherwise, and they apparently did not here, an arbitrator is under no obligation to provide explanations with his award."). The

district court properly applied this principle, noting that the parties did not jointly request a reasoned award. Dkt.70:p.4; *see* Dkt.10-21:p.4.

Moreover, as the district court also recognized, FINRA rules do not require otherwise. Dkt.70:p.4. Awards "may contain a rationale," but need not. FINRA Rule 12904(f)-(g). Rule 12904(g), governing "Explained Decisions," applies "only when all parties jointly request an explained decision." *Id.* at (g)(1). "[A]n explained decision is a fact-based award stating the general reason(s) for the arbitrators' decision." *Id.* at (g)(2). Even then, "legal authorities" are not required. *Id.* In this case, Efron requested a reasoned award and UBS did not. Dkt.10-21:p.4. Accordingly, the FINRA Rules did not require the arbitrators to issue an explained decision.

In cases where the parties have not jointly requested an explained award, Rule 12904(e) requires simply "a summary of the issues." The arbitrators provided one: they specifically identified in the "Summary" section of the award UBS's causes of action, including "contractual indemnification," and noted that Efron's Statement of Answer "denied the allegations made in the Statement of Claim and asserted various affirmative defenses." Dkt.10-21:p.3. Notably, Efron's Statement of Answer argued for application of Puerto Rico law. Dkt.66-1:pp.34-38.

On appeal, Efron offers no authority adopting his interpretation that FINRA Rule 12904(e) requires the identification of *every* subsidiary issue resolved, let alone authority vacating a FINRA award for failing to list specific subsidiary legal questions like choice of law or contract interpretation as an "issue" resolved. *See* Efron Br. 19-20. To the contrary, courts routinely confirm and enforce FINRA awards like the one here. *See, e.g., Citi Int'l Fin. Servs., LLC v. VectorGlobal WMG, Inc.*, 2018 WL 6807319, at *4 (S.D. Fla. Jan. 31, 2018), *report and recommendation adopted*, 2018 WL 6807315 (S.D. Fla. Oct. 26, 2018) (confirming FINRA award over respondent's objection that the unreasoned award exceeded the panel's authority); *Mendelka v. Penson Fin. Servs., Inc.*, 2017 WL 1208665, at *3 (S.D.N.Y. Mar. 31, 2017) (confirming FINRA award over section 10(a)(4) objection because "the failure to issue an explained decision is not itself an action that exceeded the panel's powers" under Rule 12904).

More generally, the courts that have considered arguments based on violations of FINRA procedural rules have held that they are "not a valid basis for vacating an award." *Pochat v. Lynch*, 2013 WL 4496548, at *11 (S.D. Fla. Aug. 22, 2013) (collecting cases). "To hold otherwise would risk turning every

minor violation of FINRA rules . . . into grounds for vacatur." *Stone v. Bear, Stearns & Co.*, 872 F. Supp. 2d 435, 453 (E.D. Pa. 2012).

Efron claims that the district court erred in relying on *Pochat* for the proposition that violations of FINRA rules do not warrant vacatur because *Pochat* involved "a violation of a procedural discovery rule," whereas this case supposedly involves a "substantive rule." Efron Br. 33-34. But the at-issue rules are part of FINRA's Code of Arbitration *Procedure*. They are procedural rules governing the *form* of the award. Efron cites no authority for his proffered distinction between procedural and substantive arbitration rules or for the proposition that violations of an arbitral forum's "substantive" rules are grounds for vacatur under the FAA.

In sum, as the district court held, the lack of "full recitation of every issue" or even key subsidiary issues does not violate any rule of law. Dkt.70:p.4. Because neither the FAA nor FINRA rules impose a reasoned-award requirement such as Efron envisions, the mere fact of an "omission" cannot constitute misconduct, misbehavior, overstepping, or powers "imperfectly executed." 9 U.S.C. § 10(a)(3)-(4); *see* Dkt.70:pp.4-5.

**B. The Alleged "Omissions" Neither Constitute Misconduct Nor Render the Award "Fatally Ambiguous."**

FINRA rules aside, Efron argues that the supposedly "omitted" issues were so important that their omission necessarily means that the arbitrators shirked their duties or engaged in misconduct. Efron Br. 20-23, 44-48. The district court properly dismissed this assertion as "conclusory" and "not supported by any evidence in the record." Dkt.70:p.4. Absence of explanation does not evidence, or even imply, misconduct.

The district court correctly held that the inclusion or omission of a legal issue from an award "does not rise to the level of affirmative misconduct that would prejudice Efron" or otherwise warrant vacatur under FAA sections 10(a)(3) or 10(a)(4). *Id.* at 5. To constitute "misconduct" or "misbehavior" under section 10(a)(3), arbitrators' actions must have the effect of denying a party its "right to a fair hearing." *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1017 (11th Cir. 1998); *see Rainier DSC 1, LLC v. Rainier Cap. Mgmt., LP*, 828 F.3d 362, 364 (5th Cir. 2016); *Brown v. Brown-Thill*, 762 F.3d 814, 820 (8th Cir. 2014); *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 481 F.3d 813, 816-17 (D.C. Cir. 2007) (collecting authority). Here, the arbitrators afforded Efron a full opportunity to present evidence and argument at a live hearing. And as the district court noted, Efron briefed the important issues

(including choice of law) before the panel, which duly considered them. Dkt.70:p.5; Dkt.10-21:p.4 ("The Arbitrators acknowledge that they have each read the pleadings and other materials filed by the parties."). That is enough to render Efron's allegations of misconduct meritless, *see Scott*, 141 F.3d at 1017, and he cites no case holding otherwise.

Furthermore, nothing about the award is "ambiguous" or "indefinite" within the meaning of section 10(a)(4), as Efron argues. *Contra* Efron Br. 22, 44. The award clearly summarizes the claims resolved, who prevailed, and how much is owed. It offers a "clear instruction" for a court asked to confirm the award and enforce its terms. *See Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 379 (2d Cir. 2023). No further "guidance" or explanation is needed—the award speaks for itself. *See id.*; *see also Gherardi*, 975 F.3d at 1237 ("[A]n arbitrator's actual reasoning is of such little importance to our review that it need not be explained—the decision itself is enough.").

## II. EFRON'S ARGUMENT THAT THE PANEL EXCEEDED ITS POWERS BY "MODIFYING" THE MASTER ACCOUNT AGREEMENT'S TERMS IS BOTH FORFEITED AND WRONG.

Efron devotes eleven pages of his brief to a new argument not raised in the district court. Efron Br. 24-34. He contends that the indemnification

clause is so clear that it is not even "open to interpretation." *Id.* at 26-29. The arbitrators, therefore, had no choice but to apply the clause in his favor. And because they did not, Efron sees only one explanation: the arbitrators modified the agreement and, thus, exceeded their powers within the meaning of FAA section 10(a)(4).

The Court should reject this argument for two reasons: First, Efron did not raise this argument below, and it is thus forfeited. Second, Efron agreed to have the *arbitrators* resolve the parties' dispute about UBS's entitlement to contractual indemnity. His arguments about the merits of that dispute improperly seek to unwind that agreement.

## A.    Efron Forfeited His New Argument.

As noted above, the district court understood Efron to make two main claims below: first, that the award failed to identify and explain key subsidiary issues in violation of FINRA arbitration rules and, second, that UBS engaged in misconduct and biased the panel against him. Dkt.70:pp.3-4; *see* Dkt.58:pp.9-35; Dkt.68:pp.2-9. Efron's new argument was not among them.

Nowhere did Efron argue that the arbitrators exceeded their authority by modifying or amending the contract, rather than interpreting its terms. Efron never even mentioned the words "modify" or "amend." (By contrast,

Efron's opening brief in this Court mentions "modify" seven times in as many pages.) Efron never "cite[d] to any of the various cases that support [his] current contention." *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1169 (11th Cir. 2004). And he never argued that the indemnification clause is "clear and unambiguous" or that the arbitrators failed to interpret it. To the contrary, Efron's argument below (and here, *see, e.g.*, Efron Br. 22) was that the choice-of-law analysis was the "dispositive issue" in the dispute. Dkt.68:p.4; *see also* Dkt.58:pp.13, 19, 27. In short, Efron never asked the district court to evaluate the indemnification clause for itself to determine whether the arbitrators disregarded its terms and resolved matters not entrusted to them.

Because Efron did not raise this argument below, the argument is forfeited. "[A]bsent extraordinary circumstances, legal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal." *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). None of this Court's five "exceptional conditions" excuses Efron's forfeiture. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004). No injustice would result from holding the parties to their arbitration contract and confirming the award. *See Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151,

1156 (11th Cir. 2018) (discerning no miscarriage of justice in enforcing a contract between two sophisticated parties). Efron had many opportunities to present his argument at the district court. Dkt.58; Dkt.68. This commercial arbitration matter does not implicate any interests of substantial justice. *See Cita*, 879 F.3d at 1156. The merits cut *against* Efron. *See id.* And his argument presents no significant question of "great public concern." *See id.*

**B.    Efron's New Argument Is Wrong on the Merits.**

Although Efron dresses up his argument as an excess-of-powers claim under FAA section 10(a)(4), Efron is really asking the Court to revisit the arbitrators' legal conclusions—which it cannot do.

### 1.    *The arbitrators arguably construed the contract.*

Under section 10(a)(4), a court may vacate an award "only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 572 (2013). The "sole question" for courts confronting such claims is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.* Courts thus must "defer entirely to the arbitrator's interpretation of the underlying contract no matter how wrong [they] think that interpretation is." *Wiregrass Metal Trades*

*Council AFL-CIO v. Shaw Envt'l & Infrastructure, Inc.*, 837 F.3d 1083, 1087 (11th Cir. 2016); *accord Warrior Met Coal Mining, LLC v. United Mine Workers of Am.*, 28 F.4th 1073, 1081 (11th Cir. 2022).

To be sure, "an arbitrator may not ignore the plain language of the contract." *Wiregrass*, 837 F.3d at 1088 (internal quotation marks omitted). For example, an arbitrator exceeds her powers if "she imposes a remedy that the . . . agreement does not allow." *Id.* at 1090 (citing *Butterkrust Bakeries v. Bakery, Confectionary & Tobacco Workers Int'l Union, AFL-CIO, Local No. 361*, 726 F.2d 698, 700 (11th Cir. 1984)). Likewise, an arbitrator exceeds her powers by "awarding relief on a statutory claim when the arbitration agreement allows only for arbitration of contractual claims" or by "forcing a party to submit to class arbitration without a contractual basis for concluding that the party agreed to it." *Gherardi*, 975 F.3d at 1237. But so long as a contract is "at least open to interpretation," courts may not second-guess the arbitrator's interpretation. *Wiregrass*, 837 F.3d at 1090. Even "serious interpretative error" cannot support vacatur. *Gherardi*, 975 F.3d at 1237.

When arbitrators do not explain their reasoning, courts must indulge a "strong, albeit not irrebuttable, presumption that the arbitrator had interpreted the contract instead of modifying it." *Wiregrass*, 375 F.3d at 1092.

Absent "evidence to the contrary," if one can "plausibly" read an award as either interpreting or modifying a contract, a court must presume that the award "rested on an interpretation." *Id.* at 1092-93; *see also Warrior Met Coal*, 28 F.4th at 1079.

Here, the Master Account Agreement is not simply "at least open" to an interpretation supporting the award—it plainly compels such an interpretation. *Wiregrass*, 837 F.3d at 190. The agreement contains an expansive indemnification obligation. Among other things, Efron agreed to indemnify UBS for "*any and all* losses, claims, damages, . . . settlements, . . . causes of action, . . . acts, . . . omissions, . . . judgments, liabilities and expenses (including without limitation all expenses of litigation or preparation therefor . . .) which UBS . . . may pay or incur arising out of any claims by any person or entity *in any way relating to this Account*." Dkt.10-1:p.15 (Liability) (emphases added). "In any way" connotes "extreme[]" breadth. *E.g.*, *Health First, Inc. v. Capitol Security Ins. Corp.*, 747 F. App'x. 744, 751 (11th Cir. 2018). Candelario's claim against UBS indisputably related to Efron's account. *See supra* pp.4-5. The indemnification provision easily can be read to cover UBS's post-judgment settlement of her claim and the litigation expenses that UBS incurred in defending it.

Accordingly, this case is nothing like the cases cited by Efron (most of which involved labor disputes and did not even purport to apply the FAA)[3] in which other courts vacated awards as exceeding the arbitrators' powers. In each case, the arbitral award conflicted with express contractual language. *See, e.g.*, *U.S. Soccer Fed'n v. U.S. Nat'l Soccer Team*, 838 F.3d 826, 833 (7th Cir. 2016) (arbitrator crafted requirement that contradicted "clear, unambiguous, and *not silent*" contractual provisions); *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34, 41-42 (1st Cir. 1985) (arbitrator applied footnote in one provision to another provision); *Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154, 155 (6th Cir. 1982) (arbitrator "declined to rely on the 'plain language' of the agreement" and instead created a "balancing test"). Here, by contrast, the award does not conflict with an explicit provision of the contract. In fact, Efron's complaint is that the indemnification provision does not explicitly discuss indemnification for claims involving losses allegedly caused by negligence. *See, e.g.*, Efron Br. 27. Even that assertion is debatable, as the indemnification provision expressly extends to

---

[3] Unlike the FAA, the Labor Management Relations Act "empowers federal courts to fashion a body of common law standards for confirming and vacating labor arbitration awards." *Wiregrass*, 837 F.3d at 1087 n.1. This Court has not decided whether the FAA also applies to labor cases. *See id.*

"*any and all* . . . causes of action," "acts," and "omissions." Dkt.10-1:p.15 (Liability) (emphasis added).

Because the indemnification provision is "at least open to interpretation, the next question is whether the arbitrator[s] did interpret it." *Wiregrass*, 837 F.3d at 1090. On this score, Efron protests that the arbitrators did not "include any language reflecting that they interpreted the contractual indemnification language." Efron Br. 36. But he completely ignores the requirement that courts must presume that they did. *See Wiregrass*, 837 F.3d at 1091-92; *supra* pp.26-27. Efron identifies no evidence rebutting that presumption.

Rather, all evidence points to the opposite conclusion. The award memorializes that the arbitrators confronted "the following causes of action: *contractual indemnification*; unjust enrichment; and equitable contribution." Dkt.10-21:p.3 (emphasis added). The arbitrators cited the Master Account Agreement in the award. *Id.* at 4. And they confirmed that they "each read the pleadings and other materials filed by the parties" and also considered "the testimony and evidence presented at the hearing." *Id.* Those materials and the hearing focused extensively on the indemnification clause. *E.g.*, Dkt.55-1:pp.28-37 (Efron prehearing brief); Dkt.56-1:pp.16-20 (UBS prehearing brief); Dkt.44-1:pp.23-24, 30-37, 60-62 (opening statements); Dkt.48-1:pp.126-

42, 155-56, 160-65 (closing arguments).  The record thus provides ample reason to conclude that the arbitrators construed the broad indemnification provision to cover this dispute.  That should end the inquiry.

### 2. *Legal error is not grounds for vacatur.*

Efron devotes much of his brief to a different argument:  he complains that the indemnification provision "does not explicitly provide for indemnification for UBS's own acts of negligence."  Efron Br. 27.  But, as just discussed, even accepting Efron's claim that the claimed loss arises from UBS's negligence (as opposed to Efron's intentional diversion of assets or his own negligence in urging UBS to release the restraints on his accounts), the indemnification provision is sufficiently broad to include third-party claims stemming from UBS's negligence relating to Efron's account.  Certainly nothing in the provision excludes such claims.

Efron spills significant ink relitigating his legal arguments for why the indemnification provision should not apply notwithstanding its broad scope. In particular, he contends that (1) Puerto Rico law does not enforce indemnification obligations that do not "explicitly" cover negligence, (2) even explicit indemnification clauses may violate Puerto Rico public policy, (3) under Florida choice-of-law rules, the Master Account Agreement's choice of New York

law is invalid, and (4) Puerto Rico law thus applies. *Id.* at 36-44. But the parties extensively argued and briefed these *legal* issues to the panel. *See, e.g.*, Dkt.57-1:pp.58-59, 61-62, 66, 69 (post-hearing submission, citing authorities); Dkt.44-1:pp.30-31 (opening statement); Dkt.48-1:p.161 (closing argument).[4]

As the district court correctly held, legal error is not a ground for vacating an arbitration award. Dkt.70:p.3 n.1 ("It is not for this Court to consider the merits of Efron's claims under Puerto Rico law."). This Court no longer tolerates motions for vacatur based on claims that arbitrators manifestly disregarded the law. *Frazier*, 604 F.3d at 1324. Courts cannot "revisit . . . the legal merits of the award." *Wiand*, 778 F.3d at 926.

This principle forecloses Efron's claim. He agreed to arbitral resolution of his legal arguments related to the parties' indemnification claim. *See Gherardi*, 975 F.3d at 1237. FAA section 10(a)(4) does not entitle him to judicial review of those legal arguments. At most, section 10(a)(4) authorizes "a check to make sure that the arbitration agreement granted the arbitrator authority

---

[4] Specifically, UBS explained why it was appropriate for New York law to govern both the parties' dispute and Efron's account agreement—a point that Efron had conceded on multiple prior occasions, and that the case law supports. *See, e.g.*, Dkt.57-1:pp.58-59; Dkt.44-1:pp.30-31; Dkt.48-1:p.161. UBS's post-hearing submission also showed that the outcome would be the same even applying Puerto Rico law. *See* Dkt.57-1:pp.61-62, 66, 69.

to reach the issues it resolved." *Id.* at 1238. The Master Account Agreement plainly did.

## III. THE DISTRICT COURT CORRECTLY CONCLUDED THAT THE AWARD WAS NOT PROCURED BY UNDUE MEANS OR THROUGH EVIDENT PARTIALITY.

Finally, Efron argues that the award was the product of "inflammatory evidence" introduced by UBS that ultimately prejudiced the arbitrators against him. Efron Br. 49. But, as the district court correctly found, Efron identifies no conduct constituting "undue means," nor evidence of any bias of the arbitrators. Dkt.70:pp.6-7.

FAA section 10(a)(1) permits a court to vacate an award "procured by corruption, fraud, or undue means." The latter term, "undue means," is read in conjunction with the preceding terms, "corruption" and "fraud." *PaineWebber Grp., Inc. v. Zinsmeyer Trs. P'ship*, 187 F.3d 988, 991 (8th Cir. 1999). "[U]ndue means" thus connotes immoral or illegal conduct, *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403-04 (9th Cir. 1992), equal in gravity to corruption or fraud, like a physical threat to an arbitrator or a similarly improper influence, *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 52 F.3d 359, 362 (D.C. Cir. 1995). To prevail on this ground, a party must prove by clear and convincing evidence that the undue means "materially

related to an issue in the arbitration" that deprived the party of a fair hearing or prevented him from "fully and fairly presenting his case or defense." *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988).

The district court properly applied this standard to the uncontested record and found that nothing close to corruption, fraud, or undue means occurred here. Dkt.70:pp.6-7. For example, Efron complains about UBS's introduction of evidence about the history of the parties' dispute. Efron Br. 49-50. But there is nothing corrupt, fraudulent, or similarly "undue" about providing evidence of past proceedings to an arbitration panel, particularly when a party seeks to recover attorneys' fees incurred in those proceedings. For that limited purpose, UBS offered evidence of Efron's dilatory tactics over several years. *E.g.*, Dkt.44-1:pp.162-175, 184, 216-217.[5]

Similarly, Efron complains that UBS introduced certain evidence for impeachment purposes, Efron Br. 50 (citing Dkt.47-1:pp.112-125), but it was relevant to Efron's credibility as a witness that two federal courts had found that Efron previously made false statements with the intent to purposefully

---

[5] Efron offers no support for his suggestion that some of the documents "had been restricted from the panel's access," Efron Br. 50, because it was somehow improper for the arbitrators to see them.

mislead a federal magistrate judge. Arbitrators "are not constrained by formal rules of procedure or evidence," and the panel had "wide latitude" to allow such evidence. *Rosensweig v. Morgan Stanley & Co.*, 494 F.3d 1328, 1333 (11th Cir. 2007). "[N]o court has ever suggested that the term 'undue means' should be interpreted to apply to the submission of evidence that is merely legally objectionable." *Liberty Sec. Corp. v. Fetcho*, 114 F. Supp. 2d 1319, 1321-22 (S.D. Fla. 2000) (quoting *Am. Postal Workers*, 52 F.3d at 362). In agreeing to arbitration, Efron agreed that the arbitrators, not the courts, would make those evidentiary rulings.

Nor has Efron shown "evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2). A movant may prove evident partiality by (1) pointing to an actual conflict or (2) showing that "the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Grupo Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*, 78 F.4th 1252, 1262-63 (11th Cir. 2023). Vacatur on this ground is "strictly construed," and "the alleged partiality must be direct, definite and capable of demonstration rather than remote, uncertain and speculative." *Id.* (brackets and internal quotation marks omitted).

Although Efron asserts that the panel was "biased and prejudiced" against him, he cites nothing to support this *ipse dixit*. Nor could he. Efron received a full and fair hearing "before a panel approved by both Efron and UBS." *See* Efron Br. 11. As the district court found, the "Panel itself assured" Efron of its impartiality and "thoughtfully considered" his objections. Dkt.70:pp.6-7. Efron also conducted extensive pre-hearing document discovery, Dkt.1-1:p.10; Dkt.10 (¶ 31); submitted voluminous pre- and post-hearing briefing, Dkt.10 (¶ 32); received leave to issue testimonial subpoenas to multiple witnesses, Dkt.10-15:pp.2-3; and presented evidence and argument to the arbitrators, Dkt.44-1:pp. 60-62 (opening statement); Dkt.48-1:pp.126-142 (closing argument).

At no point during the evidentiary hearings did the arbitrators cut short Efron's time, nor did Efron object to his allotted time. Rather, Efron's counsel asked to end the hearings several days earlier than scheduled, and he then told the panel that he had "no issues" or remaining objections. Dkt.48-1:p.206. Moreover, Efron's counsel expressed his gratitude to the arbitrators for "the time you have taken to carefully listen to all of the witnesses and consider all of the evidence during this final hearing," and his appreciation for "the fairness

and . . . the objectivity which you have attended to the various issues that have arisen during this hearing." *Id.* at 112-13.

However one makes sense of Efron's arguments, whether as allegations of misconduct, undue means, partiality, or bias, nothing rises to the level required by any of FAA section 10(a)'s grounds for vacatur. The district court correctly rejected them.

## CONCLUSION

For these reasons, UBS respectfully requests that the Court affirm the judgment below.

Respectfully submitted,

/s/ Amy Mason Saharia

ALEX JOSEPH SABO, II
BRESSLER AMERY & ROSS, PC
515 E. Las Olas Boulevard
Suite 800
Fort Lauderdale, FL 33301
(305) 501-5485
asabo@bressler.com

CHRISTOPHER N. MANNING
AMY MASON SAHARIA
Counsel of Record
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
(202) 434-5000
asaharia@wc.com

Counsel for Petitioner-Appellee

APRIL 11, 2024

# CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Amy Mason Saharia, counsel for petitioner-appellee and a member of the Bar of this Court, certify, pursuant to Federal Rules of Appellate Procedure 32(a)(7) and (g), that the attached Brief for petitioner-appellee UBS is proportionately spaced, has a typeface of 14 points or more, and contains 7,237 words.

/s/ Amy Mason Saharia
AMY MASON SAHARIA

APRIL 11, 2024

## CERTIFICATE OF SERVICE

I, Amy Mason Saharia, counsel for petitioner-appellee UBS and a member of the Bar of this Court, certify that, on April 11, 2024, a copy of this Brief of petitioner-appellee UBS was filed electronically through the appellate CM/ECF system with the Clerk of the Court, and that copies were sent, by third-party commercial carrier for delivery overnight, to the Clerk of the Court. I further certify that all parties required to be served have been served.

/s/ Amy Mason Saharia
AMY MASON SAHARIA